**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANTOINE DOBSON, | : | |
| Petitioner, | : | Civil Action No. 13-1711 (PGS) |
| v. | : | OPINION |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

SHERIDAN, DISTRICT JUDGE

Presently before the Court is the Petition of Antoine Dobson ("Petitioner") brought pursuant to 28 U.S.C. § 2255. (ECF Nos. 1, 6.) Respondent, United States of America ("Respondent"), filed an Answer, (ECF No. 7), and Petitioner filed a Reply, (ECF No. 10). For the following reasons, the Court denies the Petition, and declines to issue a certificate of appealability.

I. **BACKGROUND**

The Third Circuit summarized the facts of Petitioner's case as follows:

> In November 2007, Dobson—a Deputy U.S. Marshal at the time—acquired a .40 caliber Glock 27, for which he had received authorization but had not yet been trained to carry, through his position in the United States Marshals Service. At some point prior to January 18, 2008, Larry Langforddavis, Dobson's friend and a convicted felon, acquired Dobson's Glock 27, perhaps multiple times. On the evening of January 4, 2008, Dobson was celebrating his birthday at the Jersey Girls Entertainment Club. Langforddavis entered the club without being searched because he had been incorrectly introduced to the club's employees as a law enforcement

officer. Dobson sustained injuries after being assaulted outside the club on the morning of January 5. Dobson and Langforddavis spoke briefly before Langforddavis got into a car and chased after the assailants. Langforddavis returned twenty minutes later, proclaiming that he "got them" and had "sprayed the vehicle." Dobson replied that he "wanted his gun." Langforddavis later went to visit Dobson in the hospital, at which time Langforddavis showed several officers a gun, which appeared to be a Glock, holstered to his leg. On January 18, 2008, Dobson and Langforddavis became heavily intoxicated together at Slick's Tavern. Langforddavis drove Dobson to a diner where he left Dobson in the care of another friend. When Dobson got home, he called Langforddavis and told him to bring the gun back and not to leave the gun in the car overnight. Langforddavis, however, proceeded to Jersey Girls to pick up his girlfriend and upon arriving strapped the gun to his leg and exited the car. Police officers, who were already at the club for other reasons, arrested Langforddavis and confiscated the gun, later identified as Dobson's Glock 27.

*United States v. Dobson*, 454 F. App'x 127, 128-29 (3d Cir. 2011)

Petitioner was indicted on one count of disposing of a firearm and ammunition to a person convicted of a felony under 18 U.S.C. §§ 922(g)(1), 924(a)(2), and one count of aiding and abetting the same, as well as four counts of perjury. *Id.* The jury convicted Petitioner on one count of disposing of a firearm and ammunition to a person convicted of a felony and one count of perjury for lying about his knowledge of whether Mr. Langforddavis was carrying a gun on January 5, 2008. *Id.* This Court set aside the perjury conviction, but the Third Circuit reinstated it. *Id.* In October 2010, the Court sentenced Petitioner to forty-five months in prison. (*United States v. Dobson*, Crim. Action No. 08-779, ECF No. 143.) Petitioner did not file a petition for writ of certiorari in the United States Supreme Court.

On March 5, 2013, Petitioner filed the instant § 2255 motion. (ECF No. 1.) In said

2

motion, he raises the following grounds for relief:

> 1. Ineffective assistance of counsel for failing to present medical records and police report
>
> 2. Ineffective assistance of counsel for failing to present expert witness regarding memory loss and intoxication
>
> 3. Ineffective assistance of counsel for failing to object to admission of evidence regarding search of residence
>
> 4. Evidence in Mr. Langforddavis's subsequent trial exonerates Petitioner on Count Two of the indictment
>
> 5. Jury foreperson stated during deliberations that defendant was guilty because he did not testify
>
> 6. Ineffective assistance of counsel on appeal[1]

## II.    DISCUSSION

### A. Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence.    Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

"In considering a motion to vacate a defendant's sentence, 'the court must accept the truth

---

[1]  In his supporting memorandum of law, Petitioner withdrew this ground.    (Pet'r's Memorandum 22, ECF No. 6.)

of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)) (also citing R. Governing § 2255 Cases R. 4(b)).

28 U.S.C. § 2255(b) requires an evidentiary hearing for all motions brought pursuant to the statute "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992). "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546.[2]

**B. Analysis**

**1. Ineffective Assistance of Counsel**

The Sixth Amendment guarantees effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, the petitioner must show that considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013)

---

[2] An evidentiary hearing was not necessary in this case because the record conclusively establishes that Petitioner is not entitled to relief.

(noting that it is necessary to analyze an ineffectiveness claim in light of all of the circumstances) (citation omitted).    A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.    *See Strickland*, 466 U.S. at 690.    Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689.    Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."    *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."    *Id.* at 689.    If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable."    *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91).    If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation."    *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice.    *See* 466 U.S at 693.    Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.    A reasonable probability is "a probability sufficient to undermine confidence in the outcome."    *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012).    "This does not require that counsel's actions more likely than not altered the outcome,

but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

## a. Medical Records

Petitioner argues that counsel was ineffective when he failed to present the January 5, 2008 medical records from the hospital which would have shown that he was extremely intoxicated and consequently would have been unable to remember, more than nine months later, whether he saw Mr. Langforddavis at the hospital that night. (Pet'r's Memorandum 15, ECF No. 6.) Specifically, Petitioner alleges that because he answered several questions incorrectly (i.e. stating that he has diabetes when he does not; that he is married even though he is not; that he smokes two packs a day even though he does not smoke), introduction of those medical records would have "far outweighed the testimony of any number of individuals presented by the Government" who testified that he was lucid. (Pet'r's Memorandum 16.)

While hospital records that Petitioner attaches to his Petition do contain the information

6

that Petitioner alleges is incorrect and a note by the physician stating that Petitioner was intoxicated, there is also information in said records which is highly beneficial to the Government. Specifically, in several different locations on the forms, medical professionals indicated that Petitioner was "alert and oriented" and had normal "appearance, activity, orientation, behavior, affect, mood, speech, thought content, cognition, judgment and insight."   (Pet'r's Memorandum, Ex. 2, Hospital Records 2; 5, ECF No. 6-1.)   The introduction of the incorrect answers regarding Petitioner's medical history and the one note stating that he was intoxicated would come at the expense of also admitting evidence of medical professionals stating that he was lucid.   Given that fact, Petitioner's counsel can hardly be deemed ineffective for failing to introduce said records at trial.[3]

## b. Expert Testimony

Petitioner attaches an article to his Memorandum of Law from the National Institute on Alcohol Abuse and Alcoholism entitled "What Happened? Alcohol, Memory Blackouts, and the Brain."   (Pet'r's Memorandum, Ex. 3, ECF No. 6-1.)   Based on this article, Petitioner alleges that counsel was deficient for failing to call an expert witness to testify about how alcohol impairs memory.   (Pet'r's Memorandum 18, ECF No. 6.)

It is well-settled that prejudice caused by ineffective assistance of counsel cannot be based on mere speculation about the possibility of finding an expert witness, nor can it be based on mere

---

[3] Even if the Court were assume arguendo that the medical records should have been introduced into evidence, there is certainly no indication, let alone a reasonable probability, that the records would have had an effect on the outcome.   The lack of effect on the proceedings is even more likely considering the fact that the records contained observations both favorable and unfavorable to Petitioner's position.

speculation about the possible testimony.   *See Duncan v. Morton*, 256 F.3d 189, 201–02 (3d Cir.

2001).   Here, that is precisely Petitioner's argument.   He attaches an article about intoxication

and its effects on the brain from a medical institute and, based on that article, concludes that

counsel should have called an expert to testify about that topic in his defense.   However, the

possibility of obtaining such an expert and the conjecture as to how such a witness would testify

about Petitioner's case is without a doubt speculative.   Petitioner has based his entire argument

on an internet medical article which provides no specifics as to his particular circumstances.

Petitioner's vague and unsupported argument that counsel should have obtained an expert who

could testify on the topic of intoxication and memory loss is insufficient to meet the requirements

of *Strickland.   Id.*   Petitioner's claim on this ground is denied.

**c. Testimony about Search**

Petitioner's final ineffective assistance of counsel claim relates to the introduction of

testimony at trial about a search warrant executed on Petitioner's home.   Specifically, Petitioner

argues that

> [o]n two occasions during trial, counsel allowed the prosecution to
> question a witness regarding the fruitless search of his residence.
> The questions were not necessary to prove Mr. Dobson's guilt on
> any of the charges and was unnecessarily, prejudicial whereas it
> allowed the jury to believe he was being investigated for more than
> perjury or providing a weapon to a convicted felon when neither
> allegation necessitated the search of Petitioner's home.

(Pet'r's Memorandum 19, ECF No. 6.)

The occasions described by Petitioner seemingly refers to testimony from Officer Dietz, a

witness for the Government.   On direct and cross-examination, Officer Dietz discussed a search

8

of Petitioner's residence that was conducted by the police.  (*Dobson*, Crim. Action No. 08-779,

Trial Tr. 5.20:1-5.21:10; 5.29:24-5.46:14, July 6, 2009, ECF No. 64.)    The search of Petitioner's

home resulted in the seizure of three cell phones, none of which were Petitioner's.[4]    Clearly,

based on the lengthy and extensive cross-examination of Officer Dietz, Petitioner's counsel

strategically used the method of the search and the multiple phones found during the search to

attempt to undercut the Government's claim that Petitioner never actually called Mr.

Langforddavis.[5]    The search itself was lawful and there was no implication that the search was

conducted for any reason other than to seek evidence related to this incident.    As such, it is

without a doubt that Petitioner's counsel's failure to object to said testimony did not fall below an

objective standard of reasonableness and he is not entitled to relief on this ground.    *See*

*Strickland*, 466 U.S. at 689 (the reviewing court must make every effort to "eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time").

**2.  New Evidence**

In his second ground for relief, Petitioner claims to have "new evidence" which would

exonerate him.    According to Petitioner, during his trial, the officers testified that they were "an

arm's length" away from Petitioner when Mr. Langforddavis claimed to be a correctional officer

---

[4]  An unidentified male and female were present at Petitioner's residence when the search
warrant was executed.

[5]  Count six of the superseding indictment charged Petitioner with perjury based on his grand
jury testimony that he called Mr. Langforddavis from his personal cell phone when he realized
that he had left his gun in Mr. Langforddavis's car.

9

and displayed a gun.   (Pet'r's Memorandum 20, ECF No. 6.)    However, in Mr. Langforddavis's subsequent trial, Officer Benenati testified that he was standing five feet away from Petitioner when he was approached by Mr. Langforddavis, that the "subsequent events took place within 'relative seconds of each other'"; and Officer Periera was speaking to Petitioner when Mr. Langforddavis approached.   (Id. at 21.)   Petitioner argues that if that information had been presented to the jury, he would not have been convicted.

Respondent argues that Petitioner is procedurally barred from raising this claim of "new evidence" in his § 2255 petition and any such argument needed to be raised in a Rule 33 motion. *See* FED. R. CRIM. P. 33(b)(1).    In response, Petitioner argues that the Court should consider this ground for relief because even though it may be procedurally barred, the evidence itself is important enough that it warrants an exception.   (Petitioner's Reply 8-9, ECF No. 10.)   Even if Petitioner's claim is not procedurally barred, he is not entitled to relief.

In Petitioner's trial, Officer Benenati testified as follows:

> Q Was the defendant questioned about what happened to him that night?
>
> A Yes.
>
> Q By whom?
>
> A Initially Officer Pereira. Through the investigation all three of us had spoken to Mr. Dobson.
>
> Q And when Mr. Dobson was giving his account of what happened to him that night, about where were you?
>
> A Approximately three to five feet from him.
>
> Q While there were you approached by anyone?

> A Yes, sir.
>
> Q Who were you approached by?
>
> A Tall black gentleman, very muscular. Later I learned his name to be Mr. Larry Langforddavis.

(*Dobson*, Crim Action No. 08-779, Trial Tr. 2.115:1-14, June 30, 2009, ECF No. 58.)

At another time during direct examination, Officer Benenati again testified on this matter:

> Q Sir, would you show the jurors how it was shown to you on the night of January 5, 2008 by Mr. Langforddavis.
>
> A Yes. He approached me, put his arm around me at the same time. He lifted up his leg, pulled up his pant leg, exposing the firearm like so, saying, "I have my brace right here."
>
> ...
>
> Q What about the defendant where was he when Langford indicated the gun to you?
>
> A Between three and five feet away, right in front of him.

(*Id.* at 2.119:25-2.120:24.)

In Mr. Langforddavis's trial, Officer Benenati testified as follows:

> Q What about Dobson, where was he when the defendant displayed the gun to you?
>
> A Prior to my attention being thrown to Mr. Langforddavis when he put his arm around me, Mr. Dobson was sitting on the emergency room stretcher sitting up less than five feet away I would say.

(*United States v. Langforddavis*, Crim. Action No. 08-779, Trial Tr. 2.38:15-2.39:6, Dec. 2, 2009, ECF No. 109.)

Clearly, a review of this testimony shows that the officer was consistent in his statement regarding the distance between the Petitioner and himself when Mr. Langforddavis stated that he was a corrections officer and displayed his gun.    Relief is denied on this ground.

### 3.   Juror Misconduct

In his final ground for relief, Petitioner argues that

> Juror Number One, while accompanied by the only female black juror who sat in the trial, informed the Petitioner and two other individuals that the jury's foreperson persuaded a finding of guilt from the other jurors solely on the basis that Mr. Dobson did not testify in his own defense. This is a clear violation of the Constitutional guarantee of due process and prohibition against forcibly obtaining the testimony of the defendant.

(Pet'r's Memorandum 21, ECF No. 6.)    Respondent argues that as with the "new evidence" claim, Petitioner is also procedurally barred from raising this claim in his § 2255 petition.    (Resp't's Answer 7.)    Even if the Court were to assume that Petitioner is not barred from raising a claim regarding juror misconduct in his § 2255 petition, he is nevertheless not entitled to relief.

Rule 606 of the Federal Rules of Evidence states that:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

FED. R. EVID. 606(b)(1).[6]    This rule is intended to preserve the privacy of jury deliberations as

---

[6] Exceptions to this rule are testimony about whether: (1) extraneous prejudicial information was improperly brought to the jury's attention; (2) an outside influence was improperly brought to bear on any juror; or (3) a mistake was made in entering the verdict on the verdict form.    FED. R. EVID. 606(b)(2).

well as the integrity and finality of their verdicts.   *Tanner v. United States*, 483 U.S. 107, 118–20 (1987).

When reviewing a situation factually similar to Petitioner's, the Third Circuit applied Rule 606 to exclude testimony about jury deliberations.   *See United States v. Friedland*, 660 F.2d 919 (3d Cir. 1981).   In that case, after the verdict was announced, a newspaper published an interview with a juror indicating that the jury had improperly considered and discussed the appellants' failure to testify.   *Id.* at 27.   The trial court refused to conduct an examination of the jurors to verify the appellants' claim because any inquiry into the jury's deliberations would necessarily have violated FED. R. EVID. 606(b).   *Id.*   The Third Circuit affirmed, finding that "[t]he inquiry requested by appellants falls squarely within the prohibition of Rule 606(b). Because 'extraneous prejudicial information' or 'outside influence' were not alleged by appellants, the inquiry would not have fallen within the exceptions to the rule."   *Id.* at 928.

Here, Petitioner is seeking precisely the type of information protected by Rule 606.   If the Court were to accept an affidavit or permit testimony from Juror Number One, according to Petitioner, he or she would discuss the internal deliberations of the jury and how he or she felt that the foreperson improperly influenced other members about Petitioner's failure to testify.   Rule 606 forbids this type of inquiry and none of the exceptions apply because there was no extraneous prejudicial information and no outside influence.   *See Friedland*, 660 F.2d at 927; *see also United States v. Rodriquez*, 116 F.3d 1225, 1227 (8th Cir. 1997) (the fact that a defendant did not testify is not a fact the jurors learned through outside contact, communication, or publicity and therefore was not "extraneous information" and did not meet a Rule 606 exception); *United States v. Torres-*

13

*Chavez*, 744 F.3d 988, 998 (7th Cir. 2014) ("[t]he juror statements in this case concern only intrajury influences on the verdict during the deliberative process, and therefore fall squarely within the Rule 606(b)(1) prohibition") (internal citations and quotation marks omitted); *United States v. Solorzano-Salazar*, 904 F.2d 42 (9th Cir. 1990) ("[t]he fact that [the defendant] did not testify is hardly 'extraneous' information or an 'outside influence.' To the contrary, any statements concerning appellant's failure to testify fall squarely within the rule prohibiting testimony about juror conduct and statements during deliberations").   As a result, Petitioner is not entitled to relief on this ground.

## III.   CERTIFICATE OF APPEALABILITY

This Court declines to issue a certificate of appealability because Petitioner has not demonstrated "a substantial showing of the denial of a constitutional right," as required under 28 U.S.C. § 2253(c).   *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (internal quotation marks omitted).

## IV.   CONCLUSION

For the reasons stated above, Petitioner's motion is DENIED, and no certificate of appealability shall issue.   An appropriate order follows.

Dated:   *9/8/16*

_____
Peter G. Sheridan, U.S.D.J.